**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| HI-TECH COLOR, INC.,<br><br>Plaintiff,<br><br>v.<br><br>U.S. CUSTOMS AND BORDER PROTECTION; RODNEY S. SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection; and the UNITED STATES OF AMERICA,<br><br>Defendants. | Court No. 26-03801 |

**COMPLAINT**

1. This action challenges Defendants' collection of duties unlawfully imposed pursuant to the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701 *et seq*.

2. Plaintiff Hi-Tech Color, Inc. (hereinafter "Plaintiff") is an importer, as defined by 19 C.F.R. § 101.1, of merchandise into the United States that was subject to the challenged duties.

3. Beginning in February of 2025, through a series of executive orders, the President invoked IEEPA as authority to impose new and substantial tariffs ("IEEPA duties") on goods imported from nearly every foreign country, including countries from which Plaintiff sources its imports for use in its manufacturing operations. As the importer of record for these imported goods, Plaintiff was responsible for paying the challenged duties that were assessed on these goods and collected by U.S. Customs and Border Protection ("Customs" or "CBP") upon importation.

4. On February 20, 2026, the U.S. Supreme Court held that "IEEPA does not authorize the President to impose tariffs." *Learning Resources, Inc. v. Trump*, No. 24-1287, slip op. at 20 (U.S. Feb. 20, 2026) (affirming *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir.

2025)).[1]

5. The Supreme Court also confirmed that challenges to Customs' collection of duties pursuant to IEEPA fall "within the exclusive jurisdiction of" the U.S. Court of International Trade. *Id*. at 5. Thus, this Court has jurisdiction over this action and authority to order remedial relief including refunds of challenged duties paid by Plaintiff.

6. Accordingly, for the reasons set out in *Learning Resources*, Plaintiff seeks a full refund from Defendants of all challenged duties Plaintiff has paid to the United States, plus the interest accrued, pursuant to 19 C.F.R. § 24.36(a)(1).

**PARTIES**

7. Plaintiff Hi-Tech Color, Inc. is headquartered in Maryland and incorporated in Delaware. Its importer of record identification number is 22-291661400.

8. Defendant U.S. Customs and Border Protection is a component agency of the U.S. Department of Homeland Security headquartered in Washington, D.C. CBP is responsible for border security and collecting tariffs or duties and taxes on goods imported into the United States.

9. Defendant Rodney S. Scott is the Commissioner of CBP and is sued in his official capacity.

10. Defendant United States of America received the challenged duties and is the statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i)(1)(B).

11. Defendants are referred to collectively in this Complaint as "the Government."

[1] This complaint cites to the "*Learning Resources*" slip opinion because that was the lead case at the Supreme Court for purposes of the case caption. The *Learning Resources* case itself was vacated for lack of jurisdiction, while the Federal Circuit's decision in *V.O.S. Selections* was affirmed.

## JURISDICTION

12. This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1581(i) and 28 U.S.C. § 2631(i). *See Learning Resources*, slip op. at 5, n.1. Jurisdiction under 28 U.S.C. § 1581(i) is proper where, as here, the constitutionality of the collected duties is at issue, as this Court has recently concluded. *AGS Co. Automotive Sol. v. U.S. Customs and Border Protection, et al.*, No. 25-00255 (Ct. Int'l Trade Dec. 15, 2025) ("*AGS*").

13. This Court has the same powers at law, in equity, and as conferred by statute as a United States District Court. 28 U.S.C. § 1585. In a civil action under 28 U.S.C. § 1581, the Court can enter a money judgment against the United States and can order any other appropriate civil relief. 28 U.S.C. §§ 2643(a)(1), (c)(1).

14. Plaintiff has standing to bring this lawsuit because it is the importer of record of goods that entered the United States from countries subject to the IEEPA duties as implemented and collected by CBP, duties which the Supreme Court has found were unlawfully imposed. As a result of the executive orders identified in this lawsuit, Plaintiff paid the IEEPA duties to the United States and thus has suffered injury caused by those orders. The relief Plaintiff seeks from this Court would redress those injuries.

## GENERAL PLEADINGS

### I. THE PRESIDENT ORDERS A SERIES OF TARIFFS, INVOKING IEEPA FOR HIS AUTHORITY

#### A. The IEEPA Duties

15. On February 1, 2025, the President issued three executive orders imposing tariffs on imports from Canada, Mexico, and China. Each executive order was premised on IEEPA authorizing the tariffs.

16. The executive order directed at Mexico, Executive Order 14194, *Imposing Duties To*

*Address the Situation at Our Southern Border*, 90 Fed. Reg. 9117 (Feb. 7, 2025), imposed an additional 25% tariff on the import of goods from Mexico, with certain exceptions.

17. The executive order directed at Canada, Executive Order 14193, *Imposing Duties to Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 9113 (Feb. 7, 2025), also imposed a 25% tariff, with certain exceptions.

18. Finally, the executive order directed at China, Executive Order 14195, *Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China,* 90 Fed. Reg. 9121 (Feb. 7, 2025), imposed an additional 10% *ad valorem* tariff on products from China imported into the United States on top of existing duties.

19. Four days later, on February 5, 2025, the President issued another order, Executive Order 14200, *Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9277 (Feb. 11, 2025).

20. The next month, on March 3, 2025, the President amended the China Tariff Order again through Executive Order 14228, *Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 11463 (Mar. 7, 2025) ("March 3 Amendment"). The March 3 Amendment raised the incremental tariffs on imports from China to 20%.

21. On April 2, 2025, citing trade deficits with our trading partners as a national emergency, the President issued Executive Order 14257, *Regulating Imports with a Reciprocal Tariff to Rectify Trade Practices that Contribute to Large and Persistent Annual United States Goods Trade Deficits*, 90 Fed. Reg. 15041 (Apr. 7, 2025) ("Reciprocal Tariff Order"). The Reciprocal Tariff Order imposed a 10% baseline tariff on nearly all imports to the United States, effective April 5, and additional "reciprocal" tariffs on 57 countries, effective April 9. *Id.* at Annex I.

These higher country-specific tariffs ranged from 11% to 50%. *Id.*

22. On April 8, 2025, the President responded to retaliatory tariffs from China by raising the reciprocal tariff rate on China by 50 percentage points—from 34% to 84%. Exec. Order No. 14259*, Amendment to Reciprocal Tariffs and Updated Duties as Applied to Low-Value Imports from the People's Republic of China*, 90 Fed. Reg. 15509 (Apr. 14, 2025).

23. The next day, the President suspended for 90 days the higher country-specific tariffs on all countries except for China, for which he raised the "reciprocal" tariff again—from 84% to 125%. Exec. Order No. 14266, *Modifying Reciprocal Tariff Rates to Reflect Trading Partner Retaliation and Alignment*, 90 Fed. Reg. 15625 (Apr. 15, 2025). Meanwhile, the 20% tariff on imports from China remained in place, such that most imports from China faced a minimum 145% IEEPA tariff.

24. Through these executive orders, the President directed changes to the Harmonized Tariff Schedule of the United States ("HTSUS"), requiring that goods subject to the IEEPA duties be entered under new HTSUS codes.

25. On April 14, 2025, several companies filed an action in this Court challenging the legality of these tariff orders. *See V.O.S. Selections*, *et al. v. Trump*, *et al.*, No. 25-cv-00066, ECF No. 2 (Apr. 14, 2025). This Court held the orders unlawful and the U.S. Court of Appeals for the Federal Circuit ("Federal Circuit"), sitting *en banc*, affirmed this Court's judgment. It was the Federal Circuit's judgment that was, in turn, affirmed by the Supreme Court on February 20, 2026.

26. In the months following the *V.O.S. Selections* complaint, the President, invoking IEEPA, issued additional executive orders imposing additional tariffs and modifying others.

27. CBP continued to collect duties imposed by these executive orders while the *V.O.S.*

*Selections* litigation and related litigation remained pending, and only just announced on February 22, 2026, that duties imposed under the orders "will no longer be collected for goods entered for consumption or withdrawn from warehouse for consumption, on or after 12:00 a.m. eastern time on February 24, 2026." Cargo Systems Messaging Service Message # 67834313, *Ending Collection of International Emergency Economic Powers Act Duties* (Feb 22, 2026).[2]

28. By this Complaint, Plaintiff seeks relief as a result of all IEEPA duties it has paid or will pay to the United States arising from the IEEPA executive orders ("Challenged Tariff Orders").

**B. CBP's Implementation of the Tariffs**

29. CBP is charged with the assessment and collection of duties, including the IEEPA duties. *See* 19 U.S.C. §§ 1500, 1502.

30. In 1988, Congress enacted the Omnibus Trade and Competitiveness Act of 1988, which adopted the duty collection nomenclature of the HTSUS. Pub. L. No. 100–418, 102 Stat. 1107 (1988). CBP classifies merchandise imported into the United States consistent with the HTSUS, which sets out the tariff rates and statistical categories using a series of nested chapters, headings, and subheadings. 19 U.S.C. § 1202. The primary headings of the HTSUS describe broad categories of merchandise while the subheadings provide a particularized division of the goods within each category. *Id.*

31. CBP's regulations govern the classification and appraisement of merchandise, consistent with the HTSUS. 19 C.F.R. § 152.11 ("Merchandise shall be classified in accordance with the Harmonized Tariff Schedule of the United States (19 U.S.C. § 1202) as interpreted by administrative and judicial rulings.").

32. The United States International Trade Commission ("USITC") publishes and maintains

---

[2] Available at https://content.govdelivery.com/bulletins/gd/USDHSCBP-40b11c9?wgt_ref=USDHSCBP_WIDGET_2.

the HTSUS consistent with presidential orders. 19 U.S.C. §§ 1202, 3005, 3006; *Maple Leaf Marketing, Inc. v. United States*, 582 F. Supp. 3d 1365, 1378–79 (Ct. Int'l Trade 2021).

33. When goods enter the United States, CBP is responsible for assessing and collecting any tariffs on those goods, after confirming the HTSUS classification of the goods, according to the rates established by the HTSUS. 19 U.S.C. §§ 1202, 1500, 1502.

**C. Liquidation**

34. "'Liquidation' means the final computation or ascertainment of duties on entries for consumption or drawback entries." 19 C.F.R. § 159.1.

35. Typically, when goods enter (*i.e.*, are imported into) the United States, the importer of record pays an estimated duty on the entry based on its customs declaration, which asserts a value, origin, and HTSUS classification for the imported goods. *See* 19 U.S.C. § 1484; 19 C.F.R. § 141.1. CBP then reviews the customs declaration and may inspect the goods.

36. CBP then fixes the final appraisement of merchandise by confirming the final value, classification, duty rate, and final amount of duty for the imported goods. *See* 19 U.S.C. § 1500.

37. Once the final amount of duty is determined by CBP, CBP "liquidates" the entry and notifies the importer of record as to whether it owes more money or is entitled to a refund. *See* 19 U.S.C. § 1504(b).

38. Liquidation must occur within one year. *See* 19 U.S.C. § 1504(a). Typically, CBP liquidates entries 314 days after the date of entry of the goods (automatic liquidation cycle) and will post a notice on its website. 19 C.F.R. § 159.9.

39. CBP has discretion to extend the deadline for liquidation for up to one year pursuant to an importer's request and a showing of good cause. *See* 19 U.S.C. § 1504(b)(2); 19 C.F.R. § 159.12(a)(1)(ii).

40. Once liquidation has occurred, and *if* the liquidation is protestable, an importer of record

has 180 days to file a protest contesting the liquidation, asking CBP to "reliquidate" the duties. *See* 19 U.S.C. § 1514.[3] Not all liquidations are protestable; where CBP acts in a ministerial capacity (*i.e.*, without discretion) in imposing a duty, the entry's liquidation cannot be protested. *Id.*; *see also Rimco Inc. v. United States*, 98 F.4th 1046, 1053 (Fed. Cir. 2024).

41. In *AGS*, a three-judge panel of this Court confirmed that this Court has authority to reliquidate entries subject to the IEEPA duties. The Court further explained that plaintiffs "'are not required to file a protest' in cases involving constitutional challenges to duties," and that the Court's residual jurisdiction under 28 U.S.C. § 1581(i) is the proper basis for challenges to the IEEPA duties. *AGS* at 7.

## II. THE SUPREME COURT HAS HELD THAT THE IEEPA DUTIES ARE NOT AUTHORIZED

42. On May 28, 2025, a three-judge panel of this Court granted summary judgment to the plaintiffs in *V.O.S. Selections* and permanently enjoined the Defendants from enforcing the IEEPA duties at issue in that case. That decision was appealed to the Federal Circuit.

43. The Federal Circuit stayed this Court's decision and injunction and ordered an expedited briefing schedule and hearing.

44. Sitting *en banc*, the Federal Circuit issued its decision on August 29, 2025, affirming this Court's decision that the IEEPA duties were unlawfully imposed. *See V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025), *cert. granted*, No. 25-250, 2025 WL 2601020 (U.S. Sept. 9, 2025).

45. In a separate lawsuit filed by a separate group of importers, the U.S. District Court for the District of Columbia held that IEEPA does not authorize tariffs of any sort. *See Learning Res., Inc. v. Trump*, 784 F. Supp. 3d 209 (D.D.C. 2025), *cert. granted before judgment*, No. 24-

[3] CBP can also voluntarily reliquidate within 90 days of the liquidation. *See* 19 U.S.C. § 1501.

1287, 2025 WL 2601021 (U.S. Sept. 9, 2025). That decision was appealed to the Court of Appeals for the D.C. Circuit ("D.C. Circuit"), but before the D.C. Circuit held oral argument, the United States Supreme Court granted certiorari in both *V.O.S. Selections* and *Learning Resources*. The cases were consolidated, with oral argument occurring on November 5, 2025.

46. On February 20, 2026, the Supreme Court issued its opinion in both cases, holding that "IEEPA does not authorize the President to impose tariffs." *Learning Resources* at 20.[4]

## III. PLAINTIFF PAID IEEPA DUTIES

47. As of the date of this Complaint, Plaintiff has paid IEEPA duties imposed by the Challenged Tariff Orders and collected by Customs.

48. The goods Plaintiff imports into the United States that are subject to IEEPA tariffs entered the United States from foreign countries under new HTSUS codes.

49. Plaintiff has paid IEEPA duties on numerous entries.

## IV. DEFENDANTS HAVE PREVIOUSLY STIPULATED TO ISSUING REFUNDS OF THE IEEPA DUTIES, AND PLAINTIFF IS ENTITLED TO INTEREST ON THOSE REFUND PAYMENTS

50. In various other challenges to the IEEPA duties before this Court and other courts, the Government has represented that it "will not object to the Court reliquidating any of plaintiffs' entries subject to IEEPA duties that are found to be unlawful." *Princess Awesome, LLC v. U.S. Customs and Border Protection, et al.*, No. 25-078, ECF No. 16 at 12 n.4 (Ct. Int'l Trade May 23, 2025); *see also Axle of Dearborn, Inc. v. Department of Commerce, et al.*, No. 25-00091, ECF No. 13 at 7 (Ct. Int'l Trade May 30, 2025). Indeed, Defendants have previously argued that "any plaintiff who is an importer . . . will assuredly receive payment on their refund with

[4] This complaint cites to the "*Learning Resources*" slip opinion because that was the lead case at the Supreme Court for purposes of the case caption. The *Learning Resources* case itself was vacated for lack of jurisdiction, while the Federal Circuit's decision in *V.O.S. Selections* was affirmed.

interest" if Defendants did not prevail on the merits of the challenges to the IEEPA tariffs. *Learning Resources, Inc. v. Trump*, No. 25-01248, ECF No. 41 at 13 (D.D.C. June 2, 2025). As this Court found in *AGS*, the Government would be judicially estopped from taking a contrary position in this action. *AGS*, slip op. at 5 (citation omitted).

51. Customs has a statutory obligation to issue refunds on any overpayment of duties with interest. *See* 19 U.S.C. § 1505. This statutory obligation is reflected in Customs' regulations at 19 C.F.R. § 24.36. The Government has previously conceded that it has this obligation. *See, e.g.*, *Pollak Import Export Corp. v. United States*, 16 C.I.T. 58, 64, 1992 Ct. Int'l Trade LEXIS 14 (Ct. Int'l Trade 1992).

**COUNT I**

**THE CHALLENGED TARIFF ORDERS ARE UNLAWFUL FOR THE REASONS STATED BY THE SUPREME COURT IN *LEARNING RESOURCES***

52. Plaintiff incorporates paragraphs 1-51 above by reference.

53. In *Learning Resources*, the Supreme Court considered challenges to the President's authority to impose duties under IEEPA, as well as this Court's ruling and the Federal Circuit's affirmance of this Court's opinion in *V.O.S. Selections, Inc. v. Trump*, 772 F. Supp. 3d 1350, 1383 (Ct. Int'l Trade 2025), *aff'd*, 149 F.4th 1312 (Fed. Cir. 2025), holding that the President exceeded his authority under IEEPA when he claimed authority under that statute to impose tariffs on imported goods which were collected by Customs.

54. The Supreme Court held that all duties imposed under IEEPA are unlawful. In the Supreme Court's words, "[o]ur task . . . is to decide only whether the power to 'regulate . . . importation,' as granted to the President in IEEPA, embraces the power to impose tariffs. It does not." *Learning Resources*, slip op. at 16. The Supreme Court thus affirmed the Federal Circuit's judgment, which for its part had affirmed this Court's ruling on the merits regarding the legality

of the IEEPA duties. *Id*. at 21.

55. The Challenged Tariff Orders purport to impose duties and modify the HTSUS based solely on the President's purported authority under IEEPA.

56. In its motion to the Federal Circuit in *V.O.S. Selections* to stay this Court's judgment, CBP confirmed that "[i]f tariffs imposed on plaintiffs during these appeals are ultimately held unlawful, then the government will issue refunds to plaintiffs, including any postjudgment interest that accrues." Gov't Mot. Stay Pending Appeal at 25, *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025).

57. This Court is bound by the Supreme Court's decision in *Learning Resources* and, as a result of that decision, should order refunds of all IEEPA duties paid by Plaintiff, with interest as provided by law.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that this Court:

a) order CBP to reliquidate any entries that have been liquidated with IEEPA duties;

b) order CBP to liquidate all unliquidated entries subject to IEEPA duties without IEEPA duties;

c) order the United States to refund to Plaintiff the duties collected from Plaintiff on all entries subject to IEEPA duties, with interest as provided by law;

d) award Plaintiff its reasonable costs, including attorneys' fees, incurred in bringing this action; and

e) grant such further relief as this Court deems proper.

Respectfully submitted,

Dated: August 27, 2026

/s/ Sydney H. Mintzer

Sydney H. Mintzer
Ryan R. Migeed
Mayer Brown LLP
1999 K St NW
Washington, DC 20006
202-263-3866
SMintzer@mayerbrown.com
*Counsel to Hi-Tech Color, Inc.*